UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | | |
|---|---|---|
| THOMAS & BETTS CORPORATION, et al., | : : : | CIVIL ACTION NO. 05-3464 (MLC) |
| Appellants, | : : | **MEMORANDUM OPINION** |
| v. | : : | |
| MYERS POWER PRODUCTS, INC., et al., | : : : | |
| Appellees. | : : | |

**COOPER, District Judge**

This matter comes before the Court on the appeal by Thomas & Betts Corp. ("T&B"), WESCO Distribution, Inc., and Avon Electrical Supplies (collectively "Appellants") of an order entered by the United States Bankruptcy Court for the District of New Jersey ("Bankruptcy Court") on June 6, 2005 ("June 6 order").[1]  Appellants argue that the Bankruptcy Court did not have jurisdiction to reopen a closed bankruptcy proceeding to interpret an order issued prior to the close of the case.  For the reasons stated herein, the Court will affirm the order of the Bankruptcy Court.

---

[1] The order was issued following argument before Judge Ferguson on June 6, 2005.  Judge Ferguson rendered her decision from the bench, however a formal written order was filed on June 20, 2005.  (Bankr. dkt. 01-58149 entry no. 200.)  The written order states the procedural posture of the motion and incorporates the "reasons set forth on the record," but contains no additions to the oral decision.  For the purposes of this opinion, the Court will cite to the June 6 record, and consider it the decision and order of the Bankruptcy Court that is being appealed.

## BACKGROUND

This appeal arises out of the bankruptcy case, <u>In re Computer Power, Inc.</u>, No. 01-58149 (KCF).  Debtor Computer Power, Inc. ("Computer Power") filed a voluntary petition under Chapter 11 of the Bankruptcy Code on July 10, 2001.  (Bankr. dkt. no. 1.)  As part of the bankruptcy proceeding, on August 10, 2001 ("August 10 order"), the Bankruptcy Court entered an order authorizing an asset purchase agreement ("APA") between Computer Power and the United States Traffic Corp. ("UST").  (Bankr. dkt. no. 56.)  Appellee Myers Power Products, Inc. ("Myers") is an affiliate of UST formed to carry out the sale of the assets.  (Myers Motion, Bankr. dkt. no 187, at 1-2.)

The provisions of the August 10 order set out, <u>inter</u> <u>alia</u> that (1) UST would buy the assets "free and clear of all liens, claims, interests, set-offs, rights of recoupment, actions, causes of action . . . ," (2) the purchase was in contemplation of, and necessary to the confirmation of a reorganization plan, (3) the order continued to be valid after the close of the case, and (4) the Bankruptcy Court retained jurisdiction to interpret and enforce the APA order.  (8-10-01, Bankr. Ct. Order, at ¶¶ 7, 14, 18-19.)  An order confirmed Computer Power's Chapter 11 reorganization plan on May 13, 2002 (Bankr. dkt. no. 125), and the bankruptcy case was closed on August 23, 2004.  (Bankr. dkt. no. 186.)

2

Myers brought a motion on May 26, 2005, to reopen the case to enforce the terms of APA as articulated in the August 10 order. (Bankr. dkt. no. 187.)  Specifically, Myers wanted the Bankruptcy Court to enjoin proceedings brought against Myers in federal and state court in New York ("New York actions").

The New York actions are products liability actions brought by Geoffrey Gross ("Gross") against the Appellants, among others. (Appellants Br., at 7.)  Gross alleges he was injured on February 2, 2000, when he was exposed to smokey conditions caused by an AC Inverter System and its batteries.  (Id.)  Myers was impleaded as a third-party defendant in the actions.  (Id. at 8.)  It is alleged that (1) Computer Power manufactured and sold the AC Inverter, and (2) Myers is liable because it is an affiliate of UST, the successor to Computer Power.  (Id.)  The defendants in the New York actions seek indemnification and contribution from Myers.  (Id.)

In its motion before the Bankruptcy Court seeking the injunction of the New York actions, Myers argued that UST purchased the assets of Computer Power "free and clear of any liens, claims, and encumbrances of any kind," and therefore an order enjoining the New York actions was appropriate.  (Myers Motion, Bankr. dkt. no. 187, at 2.)  In response to Myer's motion, the Bankruptcy Court reopened the Computer Power bankruptcy action.  The Bankruptcy Court characterized Myer's

3

motion to enforce the terms of the August 10 order as one seeking "an interpretation of that Order [August 10 order] since the sale has already been fully implemented."  (6-6-05, Bankr. Ct. Order, at 17.)

The Bankruptcy Court, asserting that federal courts have the inherent power to interpret and enforce their own orders, restated the "free and clear" language from the August 10 order, and determined that the successor liability claims at issue in the New York actions were "interests in property" pursuant to Section 363(f) of the Bankruptcy Code, and therefore Section 363(f) allows assets to be sold free and clear of such claims. (Id. at 18-19); see also 11 U.S.C. § 363(f).  The "free and clear" language in the August 10 order "included the assets being sold free and clear of any successor claims based on product liability."  (6-6-05 Bankr. Ct. Order, at 20-21.)  The Bankruptcy Court did not, however, enjoin the New York actions because it stated that an injunction could only be awarded in an adversary proceeding.  (Id. at 21.)  The Appellants filed a notice of appeal on June 13, 2005, seeking review of the June 6 order. (Bankr. dkt. no. 197.)

Subsequent to the filing of the appeal, Myers brought an adversary action against Gross, among others, in the Bankruptcy Court to enjoin the New York actions.  (Bankr. dkt. no. 199.)  In a ruling from the bench on June 27, 2005 ("June 27 order"), the

4

Bankruptcy Court determined that it did not have jurisdiction to enter the requested restraints.  (6-27-05, Bankr. Ct. Order, at 18.)  The court, however, acknowledged that the June 27 order did not vitiate the June 6 order, "the Court stands by that decision [June 6 order] and its interpretation of the Sale Order."  (Id.)

The appeal of the June 6 order is now before this Court. The June 27 order has not been appealed.  The Appellants argue that the Bankruptcy Court (1) did not have jurisdiction to issue the June 6 order, (2) recognized its lack of jurisdiction to issue the June 6 order in the June 27 order, and (3) interpreted August 10 order erroneously.  (Appellants Br., at 10-11, 21.)

## DISCUSSION

Appellants argue that the Bankruptcy Court (1) did not have subject matter jurisdiction to reopen the bankruptcy action, (2) should have abstained from exercising jurisdiction, and (3) incorrectly determined that Myers cannot be held as a corporate successor.  (Id. at 10, 18, 21.)  Myers argues (1) that the Bankruptcy Court has broad discretion to reopen closed cases, and (2) it was within the court's discretion to do so in the Computer Power action.  (Myers Br., at 8.)

## I. Jurisdiction of the Bankruptcy Court

The jurisdiction of bankruptcy courts is limited because they derive their authority from federal statutes, not Article III of the Constitution.  In re Resorts Int'l Inc., 372 F.3d 154,

5

161 (3d Cir. 2004).  Title 28, section 1334 of the United States
Code provides the district courts with original, but not
exclusive jurisdiction over "all civil proceedings arising under
title 11 [the Bankruptcy Code], or arising in or related to cases
under title 11."  28 U.S.C § 1334(b).  The district courts have
discretion to refer "any or all cases under title 11 and any or
all proceedings arising under title 11 or arising in or related
to a case under title 11"  to the bankruptcy court.  28 U.S.C. §
157(a).

    Bankruptcy courts have jurisdiction over (1) cases under
title 11, (2) proceedings arising under title 11, (3) proceedings
arising in a case under title 11, and (4) proceedings related to
a case under title 11.  <u>In re Resorts</u>, 372 F.3d at 162.  The
bankruptcy court has full authority to adjudicate "core-
proceedings."  <u>Id.</u>  Core proceedings are cases and proceedings
arising under title 11, and proceedings arising in a case under
title 11.  <u>Id.</u>  They invoke a substantive right provided by the
federal bankruptcy law, or by nature are cases or proceedings
that could only arise in a bankruptcy action.  <u>Id.</u> at 162-63; <u>In
re Guild and Gallery Plus, Inc.</u>, 72 F.3d 1171, 1178 (3d Cir.
1996); <u>see also</u> 28 U.S.C. § 157(b)(2).

    Proceedings "related to" a case under title 11, not "arising
in" are "non-core" proceedings.  <u>In re Resorts</u>, 372 F.3d at 162.
Bankruptcy judges may hear a non-core proceeding, but any final

order or judgment on the action is entered by the district judge
based on proposed findings of fact and conclusions of law
submitted to the district judge by the bankruptcy judge.  28
U.S.C. § 157(c)(1).  The district judge reviews any disputed
matters de novo.  A proceeding is "related to" a chapter 11 case
if "the outcome of that proceeding could conceivably have any
effect on the estate being administered in bankruptcy."  In re
Pacor Inc., 743 F.2d 984, 994 (3d Cir. 1984); see also U.S. Tr.
v. Gryphon at the Stone Mansion, Inc., 166 F.3d 552, 556 (3d Cir.
1999).  Certainty or likelihood of impacting the debtor's rights,
liabilities etc. is not required, such an impact must be at least
conceivable for jurisdiction to exist.  In re Guild and Gallery
Plus, Inc., 72 F.3d at 1181.  Additionally

> [a] proceeding need not necessarily be against
> the debtor or the debtor's property.  An
> action is related to bankruptcy if the outcome
> could alter the debtor's rights, liabilities,
> options, freedom of action (either positively
> or negatively) and which in any way impacts
> upon the handling and administration of the
> bankrupt estate.

In re Pacor Inc., 743 F.2d at 994.

Whether the bankruptcy court can exercise "related to"
jurisdiction over a proceeding changes once a reorganization plan
is confirmed and a case is closed.  In re Resorts, 372 F.3d at
164-65.  To exercise jurisdiction, there must be a close nexus
between the new claim and the initial bankruptcy plan or
proceeding.  Id. at 166-67.  The claim must affect an integral

7

aspect of the bankruptcy process.  Id.  "Matters that affect the interpretation, implementation, consummation, execution, or administration of the confirmed plan will typically have the requisite close nexus."  Id.; see also Donaldson v. Bernstein, 104 F.3d 547, 553 (3d Cir. 1997) (affirming the exercise of the bankruptcy court's jurisdiction after the confirmation of a plan because the new dispute "implicate[d] the integrity of the bankruptcy process"); In re Haws, 158 B.R. 965, 969 (Bankr. S.D. Tex. 1993) (noting that a bankruptcy court does not automatically lose all jurisdiction upon confirmation of a plan because jurisdiction is necessary to adjudicate disputes regarding the interpretation of confirmed plans).  "A bankruptcy court retains post-confirmation jurisdiction to interpret and enforce is own orders, particularly when a dispute arises over a bankruptcy plan of reorganization."  In re Petrie Retail, Inc., 304 F.3d 223, 230 (2d Cir. 2002); see also In re Zinchiak, 406 F.3d 214, 224 (3d Cir. 2005) (agreeing that the bankruptcy court was "well suited to provide the best interpretation of its own order"); In re Texaco Inc., 182 B.R. 937, 944 (Bankr. S.D.N.Y. 1995) (bankruptcy court has subject matter jurisdiction to interpret and enforce its own order).

Post-confirmation jurisdiction cannot be conferred by retention of jurisdiction provisions in a bankruptcy plan or by consent.  In re Resorts, 372 F.3d at 161.  Such retention

8

provisions will only be given effect if there is bankruptcy court jurisdiction independent of the provision.  Id.

## II. Authority of the Bankruptcy Court

Once it is established that the bankruptcy court has jurisdiction over a case or proceeding, the bankruptcy court may

> issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title [title 11]. No provision of this title . . . shall be construed to preclude the court from, sua sponte, taking any action or making any determination necessary or appropriate to enforce or implement court orders or rules, or to prevent an abuse of process.

11 U.S.C. § 105(a).  The bankruptcy court can direct the debtor or other necessary party to perform any acts that are required to consummate a bankruptcy plan.  11 U.S.C. § 1142(b).  Once a plan is confirmed, the bankruptcy court may issue any order necessary to administer the estate.  Bankr. R. 3020.  It may open a closed case "to administer assets, to accord relief to the debtor, or for other cause."  11 U.S.C. § 350(b); see also Bankr. R. 5010 (providing that a case may be reopened on motion by a debtor or other party-in-interest).  The authority to reopen a case for "other cause" gives the bankruptcy court broad discretion to reopen a case when the individual circumstances of a particular case provide a reason to reopen the case.  In re Case, 937 F.2d 1014, 1018 (5th Cir. 1991); see also In re Zinchiak, 406 F.3d at 223 ("bankruptcy courts have broad discretion to reopen cases after an estate has been administered").

9

**III. District Court Authority to Review Bankruptcy Proceedings**

A district court has appellate jurisdiction over a bankruptcy court's final judgments, orders, and decrees. 28 U.S.C. § 158(a). The district court reviews the bankruptcy court's findings of fact for clear error, and its conclusions of law de novo. In re Trans World Airlines, Inc., 322 F.3d 283, 287 (3d Cir. 2003); In re Response U.S.A., Inc., 288 B.R. 88, 92 (D.N.J. 2003). The decision of a bankruptcy court to reopen a case is reviewed for abuse of discretion. Neville v. Harris, 192 B.R. 825, 829 (D.N.J. 1996). A bankruptcy court abuses its discretion when its ruling is based on an error of law or a misapplication of law to the facts. In re O'Brien Envtl. Energy, Inc., 188 F.3d 116, 122 (3d Cir. 1999).

**IV. The June 6 Order of the Bankruptcy Court**

**A. The Bankruptcy Court Had Jurisdiction Over the Matter**

Based on the standard outlined above, in order to determine the propriety of the Bankruptcy Court's June 6 order, this Court will first examine whether the Bankruptcy Court had jurisdiction over the proceeding. The Court, then, will examine the substance of the June 6 order.

"Related to" jurisdiction is the broadest source of bankruptcy court jurisdiction, therefore the June 6 proceeding

10

must at minimum meet the standard for "related to" jurisdiction.[2]
The proceeding giving rise to the June 6 order followed the
confirmation of the plan and close of the case.  To establish
"related to" jurisdiction, a close nexus must exist between the
new Myers claim and the Computer Power bankruptcy action.  See In
re Resorts, 372 F.3d at 166-67 (articulating the close nexus
standard).

    The June 6 proceeding that is at issue in this appeal
involved rights and liabilities established by the August 10
order authorizing the APA.  The August 10 order itself was a core
proceeding because orders approving the sale of property are core
bankruptcy proceedings.  See  28 U.S.C. § 157(b)(2)(N).  It was
an integral aspect of the bankruptcy action.  As recognized by
the terms of the August 10 order, "[t]he sale of the Assets to
Purchaser . . . is in contemplation of the implementation of a
plan of reorganization and necessary to the confirmation and

---

[2] It is not necessary to determine whether the June 6
dispute was a core proceeding if jurisdiction is satisfied based
upon the "related to" standard.  In re Resorts, 372 F.3d at 163;
Donaldson, 104 F.3d at 552.  Arguably, however, the June 6
proceeding was a core proceeding because the court was asked to
enforce and construe an order which itself was a core proceeding.
See In re Trans World Airlines Inc., 287 B.R. 42, 49 n.16 (Bankr.
D. Del. 2002) (noting that core proceedings are those that arise
from, concern, or have some impact on orders approving the sale
of property); In re Texaco Inc., 182 B.R. at 944 (holding that a
proceeding to enforce and construe a bankruptcy court order post-
confirmation was a core proceeding).

consummation of any plan of reorganization."   (8-10-01, Bankr.
Ct. Order, at ¶ 14.)

The Bankruptcy Court interpreted the August 10 order in the
June 6 order.  The interpretation provided was not merely
affected by, and linked to the August 10 order and APA, it was an
interpretation of the language of the August 10 order itself.
See Petrie Retail, Inc., 304 F.3d at 229, 230 (holding that a
dispute regarding a pre-bankruptcy petition contract was a core
proceeding because terms of the contract were incorporated into a
court order that approved the sale of property and established
certain rights and liabilities of the parties).  But see In re
Haws, 158 B.R. at 971 (holding that the bankruptcy court did not
have jurisdiction to hear a dispute because it would have no
effect on the bankruptcy estate).  Determining the meaning and
implications of the free and clear language, even after the
completed sale, was essential to the Computer Power action
because the Bankruptcy Court recognized that:

> [t]he Purchaser [UST] is unwilling to purchase the
> Assets unless it can obtain good and marketable
> title to all Purchased Assets, free and clear of
> liens, claims, and interests . . . If the sale of
> the Assets were delayed, there is a substantial
> risk that the Debtor's business will deteriorate,
> impairing or preventing a beneficial sale.

(8-10-01, Bankr. Ct. Order, at 3.)  The June 6 proceeding bore a
close nexus to the bankruptcy action.  Further, the Bankruptcy
Court expressly retained exclusive jurisdiction to interpret and

12

enforce the August 10 order.  (8-10-01, Bankr. Ct. Order, at ¶ 19.)  An independent basis of jurisdiction existed therefore such a retention provision could be given effect.  The Bankruptcy Court's exercise of jurisdiction over the matter was proper.

The Appellants argue that in its June 27 order, the Bankruptcy Court recognized that it did not have jurisdiction to render the June 6 opinion.  (Appellants Br., at 4, 17.) Appellants, however, have misread the June 27 order, and fail to recognize the jurisdictional distinction drawn by the Bankruptcy Court in the June 27 order.  The June 6 order interpreted the free and clear language of the August 10 order, which for the reasons discussed <u>supra</u>, the Bankruptcy Court had jurisdiction to do.  In the June 27 order the Bankruptcy Court determined that while it did have jurisdiction to interpret its own order, it did not have jurisdiction to issue an injunction.  (6-27-05, Bankr. Ct. Order, at 18.)  "Here [June 27] the Court must find that it does not have jurisdiction to enter the requested preliminary restraints . . . . This ruling does not completely vitiate the Court's June 6th decision . . . this Court found that it had jurisdiction to interpret its own Order . . . . The Court stands by that decision."  (<u>Id.</u>)

## B. The Decision to Reopen the Case

Recognizing that the Bankruptcy Court had jurisdiction to consider the June 6 motion, the Court here reviews the Bankruptcy

Court's decision to reopen the case for abuse of discretion.  As
noted above, bankruptcy courts have broad discretion to reopen a
case for cause, and to issue orders necessary to administer the
estate.  The Bankruptcy Court in this case determined that
"sufficient causes exists under 350(b) to reopen this case and
decide this Motion."  (6-6-05, Bankr. Ct. Order, at 16-17.)  The
matter at issue in the June 6 order, asked the court to interpret
and enforce its own order, an order upon which the confirmation
of bankruptcy plan depended.  A need to interpret an integral
aspect of a bankruptcy court order is sufficient cause to reopen
a case.  In light of these circumstances, it was not an abuse of
discretion for the Bankruptcy Court to reopen the Computer Power
action.  See e.g. In re Zinchiak, 406 F.3d at 223 (finding that
sufficient evidence supported the bankruptcy court decision to
reopen a case for cause because the new petition implicated an
interpretation of the court's order); In re Case, 937 F.2d at
1020 (reopening bankruptcy case to resolve a dispute regarding a
promissory note issued to satisfy a pre-bankruptcy debt was not
an abuse of discretion because the note was necessary to
formulate a reorganization plan that was acceptable to all
creditors).

**C. The Substance of the June 6 Bankruptcy Court Order**

The Appellants argue that even if the Bankruptcy Court had
jurisdiction to reopen the Computer Power bankruptcy action to

14

interpret the August 10 order, the Bankruptcy Court erroneously determined that Myers could not be held liable as a corporate successor. (Appellants Br., at 21.) The Bankruptcy Court, however, did not render a decision on the issue of Myers's corporate successor liability. (6-6-05, Bankr. Ct. Order, at 17.) "The Court is not deciding whether under state law Myers would have any corporate successor product liability." (Id.) Rather, the Bankruptcy Court characterized (1) Myers motion as one "seeking [] an interpretation of that Order [August 10 order]," and (2) its decision as one "clarifying the import of the free and clear language in this Court's Sale Order." (Id.) Specifically, the Bankruptcy Court interpreted (1) whether the free and clear language in the August 10 order encompassed freedom from products liability claims, and (2) if the language of the order did include freedom from products liability claims, whether such a sale free and clear of successor liability is authorized by 11 U.S.C. § 363(f) ("Section 363(f)").[3] It neither addressed who the corporate successor was, nor who bore liability for any claims.

---

[3] Myers also characterized the issue to be determined by the court as "whether interests under 363(f) include all claims including products liability claims." (6-6-05, Bankr. Ct. Order, at 15.)

15

### 1. Freedom from Products Liability Claims

The August 10 order, authorized the sale of Computer Power's assets free and clear of all:

> liens, claims, interests, set-offs, rights of recoupment, actions, causes of actions, demands, debts, obligations, rights, mortgages, pledges, security interests, restrictions, levies, liabilities, obligations, encumbrances, charges, claims and interests of any and every kind, nature, and description whatsoever, including without limitation, environmental claims, with all such liens, claims, interests, set-offs, rights of recoupment, actions, causes of action, demands, debts, obligations, rights, mortgages, pledges, security interests, restrictions, levies, liabilities, obligations, encumbrances, charges, claims and interests . . .

(8-10-05, Bankr. Ct. Order, at 6.)  The Bankruptcy Court determined that freedom from products liability claims is encompassed in this language.  (6-6-05, Bankr. Ct. Order, at 18.)

### 2. Authority Under Section 363(f)

Section 363(f) authorizes a trustee to sell property "free and clear of any interest in such property."  11 U.S.C. § 363(f). The Appellants argued that the statute uses the term interest and not claim, and that Myers's position that an "interest in property" includes products liability claims was too broad an interpretation of the statute.  (6-6-05, Order, at 5, 11, 18.) The Bankruptcy Court, citing In re Trans World Airlines, Inc., 322 F.3d 283 (3d Cir. 2003), determined that products liability

claims are "interests in property" as enumerated in the statute, and therefore the court could order a sale free and clear of products liability claims (6-6-05, Bankr. Ct. Order, at 19-21.)

**D. Review of the June 6 Bankruptcy Court Order**

As articulated by the Bankruptcy Court, the issue before the court on June 6 was the "interpretation of a federal statute, specifically section 363(f) of the bankruptcy code." (Id. at 19.) The Bankruptcy Court's decision therefore, was a conclusion of law, and this Court reviews the decision de novo.

**1. The TWA Decision**

The Bankruptcy Court based its decision on the Trans World Airlines ("TWA") decision issued by the Third Circuit. In re Trans World Airlines, 322 F.3d 283 (3d Cir. 2003). In TWA, the bankruptcy court issued an order that permitted Trans World Airlines to sell their assets to American Airlines free and clear of employment discrimination claims and flight attendants' rights under a travel voucher program. Id. at 286-87. The bankruptcy court indicated that such a sale was in accordance with Section 363(f). Id. at 286. On appeal the district court affirmed the bankruptcy court's holding that the discrimination and voucher claims were interests in property pursuant to Section 363(f), and Trans World Airlines's assets could be transferred free and clear of such claims. Id. at 287.

17

The Third Circuit framed the issue as determining the meaning of "interest in property."  It noted "the trend seems to be toward a more expansive reading of 'interests in property' which encompasses other obligations that may flow from ownership of the property."  Id. at 289 (internal quotes and cites omitted).  It affirmed the district and bankruptcy court decisions that the claims were interests in property, and property could be sold free and clear of such claims.  The Circuit indicated that to equate an interest in property with in rem interests only would be inconsistent with the statute.  Id. at 290; see also In re Leckie Smokeless Coal Co., 99 F.3d 573, 582 (4th Cir. 1996) (declining to adopt a restricted reading of Section 363(f) noting that Congress did not expressly limit Section 363(f), and determining that financial obligations to a benefit plan and fund are "interests in property" pursuant to Section 363(f)).[4]  The Circuit noted that the assets/property sold gave rise to the claims at issue therefore the claims were

---

[4] Some courts have held that the bankruptcy court authorization of a sale of assets free and clear of successor liability claims only includes interests existing prior to the sale of the assets, not future claims that arise after the bankruptcy proceedings.  See e.g. Ninth Ave. Remedial Group v. Allis-Chalmers Corp., 195 B.R. 716, 732-33 (N.D. Ind. 1996); In re All Amer. Ashburn Inc., 56 B.R. 186, 189-90 (Bankr. N.D. Ga. 1986).  The Third Circuit in TWA did not explicitly draw this distinction.  If it had, however, the result in this case would be unchanged because the accident in which Gross was injured occurred on February 12, 2000, and the order approving the APA was not entered until August 10, 2001.

18

properly considered an interest in the property/assets.  In re Trans World Airlines, 322 F.3d at 288-89.  But see Folger Adam Security, Inc. v. DeMatteis/MacGregor JV, 209 F.3d 252, 261 (3d Cir. 2000) (holding that affirmative defenses are not interests in property and therefore not extinguished by a free and clear sale).

### 2. Application of TWA to the June 6 Order

This Court, like the Bankruptcy Court, is bound by decisions issued by the Third Circuit.  TWA has not been overruled, and is the precedent most relevant and applicable to the matter before the Court.  In the Computer Power action, the products/successor liability claims are tied to the property that was sold subject to the APA.  As in TWA, the assets sold by Computer Power to UST gave rise to the claims that Gross now asserts.  Employing the expansive reading of "interests in property," as directed to by the Third Circuit, this Court finds that such products/successor liability claims are interests in property pursuant to Section 363(f).  As interests in property, the Bankruptcy Court could authorize the sale of Computer Power's assets free and clear of

such products/successor liability claims.[5]  The interpretation of
the Bankruptcy Court, therefore is affirmed.

### 3. Authority to Enjoin the New York Actions

    In their notice of appeal, the Appellants challenge whether
the Bankruptcy Court has jurisdiction to enjoin the New York
actions.  (Appellants Br., at 6.)  The Bankruptcy Court, however,
did not directly address its jurisdiction to issue an injunction
in the June 6 order.  It indicated, rather, that the Bankruptcy
Rules indicate that an injunction can only be obtained through an
adversary proceeding which is commenced upon the filing of a
complaint.  See Bankr. R. 7001, 7003.  The June 6 proceeding was

---

    [5] As enumerated previously, the relevant part of Section
363(f) at issue in this appeal states "[t]he trustee may sell
property . . . free and clear of any <u>interest in such property</u>."
The statute, however, goes on to qualify this authorization
saying that such sale can occur:
         only if
         (1) applicable nonbankruptcy law permits sale
             of such property free and clear of such
             interest;
         (2) such entity consents;
         (3) such interest is a lien and the price at
             which such property is to be sold is
             greater than the aggregatevalue of all
             liens on such property;
         (4) such interest is in bona fide dispute; or
         (5) such entity could be compelled in a legal
             or equitable proceeding, to accept a money
             satisfaction of such interest.
11 U.S.C § 363(f).  The Bankruptcy Court interpretation of the
August 10 order, the issues presented on appeal, and the parties'
briefs are limited to the determining the meaning of "interest in
property."  This opinion is limited to that question, and makes
no determination as to the relationship between the
qualifications listed at (1) through (5) in the statute and the
free and clear language of the APA.

the result of a motion, not an adversary proceeding.  The
Bankruptcy Court did not make a determination as to its
jurisdiction to enjoin the New York action until June 27, 2005,
when an adversary proceeding was properly before the court.  The
June 27 order is not the subject of this appeal, and therefore
the Court will not address the Bankruptcy Court's determination
that it did not have jurisdiction to enter the requested
restraints.[6]  (6-27-05, Bankr. Ct. Order, at 18.)

**CONCLUSION**

The Court, for the reasons stated <u>supra</u>, will affirm the
June 6, 2005 order of the United States Bankruptcy Court for the
District of New Jersey.  An appropriate order will issue.


                                    s/ Mary L. Cooper
                              **MARY L. COOPER**
                              United States District Judge

---

[6] The June 27 order could not be the subject of this appeal
because this notice of appeal was filed on June 12, 2005, before
the June 27 decision was rendered.  The June 27 order cannot now
be appealed because Bankruptcy Rule 8002 requires that notice of
an appeal from an order of the bankruptcy court be filed within
10 days of the entry of the order which is appealed.